UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TED ROBERTS,

        Petitioner,

v.                                  Case No:   2:11-cv-364-FtM-38DNF

STATE OF FLORIDA, FLORIDA
ATTORNEY GENERAL and
SECRETARY, DOC,

        Respondents.
_____/

## OPINION AND ORDER[1]

### I. Status

Petitioner Ted Roberts (hereinafter "Petitioner," "Defendant") initiated this action *pro se* by filing a Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 challenging his jury based judgment and conviction of robbery with a firearm, grand theft, and grand theft of a motor vehicle entered in the Twentieth Judicial Circuit Court, Lee County, Florida (case no. 01-cf-1004B) on December 23, 2003.[2]   Pursuant to the

---

[1] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

[2] The Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing."   Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).   Thus, the Petition was filed on June 23, 2011.

Court's October 5, 2011 order, Petitioner filed an Amended Petition (Doc. #12).   The Amended Petition raises the following grounds for relief: (1) the trial court improperly denied his motion to suppress for illegal stop and seizure; (2) the trial court improperly denied his motion for a new trial based on juror misconduct; (3) ineffective assistance of trial counsel when counsel misadvised him about what questions the prosecutor could ask if Petitioner testified on his own behalf; and, (4) ineffective assistance of counsel for failing to call *alibi* witnesses.   See generally Amended Petition.   Respondent filed a Response (Doc. #19) in opposition to the Amended Petition and an appendix consisting of pertinent trial records and postconviction motions (Doc. #20, Exhs. 1-31, Exh. 32 Vol. I-III).   Petitioner filed a Reply (Doc. #24).   Pursuant to the Court's Order (Doc. #27), Respondent filed a supplement to the appendix consisting of *inter alia* the trial court's hearing denying Petitioner's motion for a new trial (Doc. #28). This matter is ripe for review.

## II.   Applicable § 2254 Law

### A.   Deferential Review Required By AEDPA

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001).   Consequently, post-AEDPA law governs this action.   Abdul-Kabir, 550 U.S. at 246; Penry, 532 U.S. at 792; Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

_____

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011).

"This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted).   See also Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits."   Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011).   Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court.   Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).   Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court."   Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court."   Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than

the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision).   "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."   Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012)(internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 131 S. Ct. at 770.   First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision.   Id. (citations omitted).   Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review."   Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005).   The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits."   Cullen, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order.   Id.

### B.   Federal Claim Must Be Exhausted in State Court

Ordinarily, a state prisoner seeking federal habeas relief must first "'exhaus[t] the remedies available in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts 'the first opportunity to address the correct alleged violations of [the] prisoner's federal rights.'" Walker v. Martin, ____ U.S. ____, 131 S.Ct. 1120, 1127 (2011)(quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991)).   This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts.   Rhines v. Weber, 544 U.S. 269, 274 (2005).   "Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.   That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010)(citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) and Castile v. Peoples, 489 U.S. 346, 351 (1989)).

To fairly present a claim, a petitioner must present the *same* federal claim to the state court that he urges the federal court to consider.   A mere citation to the federal constitution in a state court proceeding is insufficient for purposes of exhaustion. Anderson v. Harless, 459 U.S. 4, 7 (1983).   A state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Duncan v. Henry, 513 U.S. 364, 366 (1995)(per curiam).   "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"   McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir.

2005) (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002).   Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief . . . . ." Smith, 256 F.3d at 1138. A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances.   First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.   House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008).   In Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309, 1318 (2012), the Supreme Court held that if "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim ..." when (1) "the state courts did not appoint counsel in the initial-review collateral proceeding" or (2) "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective" pursuant to Strickland. Id. In such instances, the prisoner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id.   Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause

and prejudice, if such a review is necessary to correct a fundamental miscarriage of justice.  House, 547 U.S. at 536; Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

### C.  Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  Newland, 527 F.3d at 1184.  In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. 4, 8, 130 S. Ct. 13, 16 (2009); Cullen v. Pinholster, 131 S. Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices."  Bobby Van Hook, 130 S. Ct. at 17

(internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id. A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

### III. Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in

the record before the Court.   Schriro, 550 U.S. at 474; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

## A.  Ground One

Petitioner argues that the trial court erred by denying his motion to suppress because he was "illegally detained and seized."   Amended Petition at 5.   In response, Respondent argues that claim is unexhausted and now procedurally defaulted because Petitioner failed to raise his claim concerning the trial court's error in denying his motion to suppress on direct appeal as required under Florida law.   Response at 22-23. Additionally, Respondent asserts that Ground One is precluded from federal review under Stone v. Powell, 428 U.S. 465 (1986).   Id. at 23-24.

The record reveals that Petitioner only raised one issue on direct appeal:

> Did the trial court err in refusing to grant appellant's motion for a new trial based on the jury having been tainted by allegations of outside knowledge by the jury foreman.

Exh. 11 at 2.   In Florida, "[a]ny claim relating to trial court error must be raised on direct appeal . . . . ."   Robinson v. State, 913 So. 2d 514, 524 n. 9 (Fla. 2005); Spencer v. State, 842 So. 2d 52, 60 (Fla. 2003).   As more fully discussed above, a petitioner must fully and properly exhaust his state court remedies on direct appeal or in a state postconviction motion as a prerequisite to federal habeas review.   A criminal defendant who fails to raise a claim on direct appeal when required to do so by State law is barred from raising the claim in his federal habeas petition, absent a showing of cause for the default and prejudice, or a fundamental miscarriage of justice.   Petitioner fails to demonstrate cause and prejudice or a fundamental miscarriage of justice.   Consequently, federal habeas review of Ground One is foreclosed and the ground is dismissed as unexhausted and procedurally defaulted.

Even if the Court were to address the merits of this procedurally defaulted claim, the Court would be barred from reviewing the claim under Stone.   Petitioner, through counsel, filed a motion to suppress.   Exh. 3.   The motion alleged that there was no reasonable suspicion to stop the vehicle form the BOLO that was transmitted.   Id. Petitioner also filed a *pro se* motion arguing that the police officer prolonged the detention during the traffic stop.   Exh. 4.   Petitioner's defense counsel said that he could not ethically represent Petitioner on his *pro se* motion, but did assist him.   Exh. 3 at 271-73. The trial court held a motion to suppress hearing during which the two officers involved in the stop and search of the vehicle and Petitioner testified.   Exh. 5.   The trial court denied the motion to suppress.   Exh. 5 at 51.

The law is well settled that a federal court cannot entertain a violation of a habeas petitioner's Fourth Amendment rights if the petitioner had an opportunity for full and fair consideration of his claim in the state courts.   Stone, 428 U.S. at 494; Bradley v. Nagle, 212 F.3d 559, 564 (11th Cir. 2000); Mincey v. Head, 206 F.3d 1106, 1125 (11th Cir. 2000). "[F]ull and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by higher state court."   Mincey, 206 F.3d at 1126.   Here, the State court's denial of the motion to suppress after development at the evidentiary hearing triggers the bar of Stone v. Powell, precluding federal review of Petitioner's Fourth Amendment claim, because the State provided Petitioner with processes for full and adequate consideration of this ground.   Petitioner does not demonstrate that the suppression hearing conducted by the trial court (and the review of trial court's conclusions by the appellate court had he pursued that relief) did not afford him a full and fair opportunity to develop the factual issues of his case.   Any allegation of

state court error in denying a motion to suppress does not suffice to avoid the Stone bar. See Swicegood v. Alabama, 577 F.2d 1322, 1324 (5th Cir. 1978)(holding that the Stone bar applies despite an error by the state court in deciding the merits of a Fourth Amendment claim.).[3]   Accordingly, pursuant to Stone, Ground One of the Amended Petition is dismissed.

## B. Ground Two

Petitioner argues that the trial court erred by denying his motion for a new trial based on juror misconduct.   Amended Petition at 7.   Petitioner believes that the juror foreman tainted the jury.   Id.   In Response, Respondent argues that this matter only presents an issue of State law and therefore federal review is precluded.   Response at 26.   Respondent also addresses the merits and argues that the postconviction court's denial of this claim was neither contrary to, nor an unreasonable application of the federal law, nor was it an unreasonable application of the facts in light of the evidence presented. Id. at 26-28.

During the jury deliberations, counsel realized that an alternate juror in Petitioner's co-defendant's trial resided at the same address as a juror serving on Petitioner's jury. After the jury returned its verdict, Petitioner filed a motion for a new trial arguing that one of the jurors was married to an alternate juror in Petitioner's co-defendant's case.   See Exh. 32, Vol. II. at 441-491.   The juror in Petitioner's case served as the foreman, so he was questioned first and stated that he and his wife never discussed the case.   The judge

---

[3]Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued prior to the close of business on September 30, 1981, binds this court.   Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

brought each juror in individually and each testified that the foreman never mentioned his wife served on a jury, nor did they even realize he was married.   Each juror testified that their decision to find Petitioner guilty was their own and that they based their decision on only the evidence and facts presented during Petitioner's trial.   <u>Id.</u>

A review of the record reveals that Petitioner raised this claim on direct appeal. Exh. 11 at 32.   The State filed an answer brief.   Exh. 12.   The appellate court *per curiam* affirmed the trial court's decision.   Exh. 13.   However, while Petitioner went through the proper steps to exhaust his claim, the claim was only set forth in terms of a violation of State law.   In other words, Ground Two does not raise an argument under federal law and in Petitioner's Reply he acknowledges that he did not raise a federal issue, but asserts that he is "unfamiliar with the law."   <u>See</u> Amended Petition; Reply at 3. Significantly, Petitioner never argued that his Due Process Rights were violated as a result of the juror foreman having previous knowledge about his case through his wife that served as an alternate juror in his co-defendant's case.   <u>See</u> Amended Petition; Reply.   To present a federal constitutional claim properly in state court, "the petitioner must make the state court aware that the claims asserted present federal constitutional issues."   <u>Snowden v. Singletary</u>, 135 F.3d 732, 735 (11th Cir. 1998).   "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."   <u>Duncan v. Henry</u>, 513 U.S. 364 (1995).   "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state law claim was made."   <u>Anderson v. Harless</u>, 459 U.S. 4 (1982). In fact, the appellate brief relies upon and cites to almost only Florida law.   <u>See</u> Exh. 11;

McNair, 416 F.3d at 1303-1304 (finding federal dimension of claim unexhausted when petitioner never cited any United States Supreme Court precedent or federal appellate court cases).   Petitioner only references Remmer v. United States in the direct appeal brief for purposes of arguing that the State failed to meet its burden of showing that the jury foreman's service on Petitioner's jury was harmless.   The Court finds such a general isolated reference wholly insufficient and exactly the type of "needle in the haystack" that the Eleventh Circuit has previously rejected as satisfying the exhaustion requirement. See Kelley, 877 F.3d at 1344.   Thus, Petitioner did not satisfy the exhaustion requirement and would now be procedurally barred under Florida law from raising a federal claim before the State court.   Sullivan v. Wainwright, 695 F.2d 1306, 1310 (11th Cir. 1983)(claims that should have been raised on direct appeal and were not are procedurally barred).   Petitioner does not establish an exception to the exhaustion requirement: that cause for the procedural default exists, that actual prejudice results from the procedural default, or that review is necessary to correct a fundamental miscarriage of justice.   Consequently, Petitioner's claim is dismissed as procedurally defaulted.

Even if the Court addressed the merits and construed Ground Two to raise a Fourteenth Amendment Due Process claim, Petitioner's claim fares no better.   The Eleventh Circuit Court of Appeals summarized the law on juror misconduct claims starting with Turner v. Louisiana, 379 U.S. 466 (1965).

> In that case [Turner], a defendant was convicted and sentenced to death, based in large part on the testimony of two deputy sheriffs whose credibility was challenged by the defendant.   Pursuant to Louisiana law, however, the jury was placed in the charge of these same two deputies during the course of the trial, during which time the deputies "ate with them, conversed with them, and did errands for them."   Id. at

468.   The Court concluded that this interaction between the deputies and the jurors violated the defendant's rights stating:

> In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the "evidence developed" against a defendant shall come from the witness stand in a public courtroom where there is a full judicial protection of the defendant's right to confrontation, of cross-examination, and of counsel.   What happened in this case operated to subvert these basic guarantees of trial by jury.   It is to be emphasized that the testimony of [the defendants] was not confined to some uncontroverted or merely formal aspect of the case for the prosecution.   On the contrary, the credibility which the jury attached to the testimony of these two key witnesses must inevitably have determined whether [the defendant] was to sent to his death.   To be sure, their credibility was assailed by Turner's counsel through cross-examination in open court. But the potentialities of what went on outside the courtroom during the three days of trial may well have made these courtroom proceedings little more than a hollow formality.

Id. at 472.   Therefore, the Court recognized that it may violate a defendant's rights to allow a jury's verdict to be affected by evidence or other influences of external to the court proceedings.

In Remmer v. United States, 347 U.S. 227, a juror was approached by an unknown person during the course of a trial and informed that he could profit from bringing a verdict favorable to the defendant.   The juror informed the judge of this event, and the judge had the FBI investigate the issue, but concluded, without informing the defendant, that the comment was made in jest and nothing further needed to be done.   Id. at 228.   The Court noted that "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about a matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties."   Id. at 229. The Court vacated the judgment and remanded for a hearing

concerning the effect of the FBI investigation on the juror, noting:

> The sending of an F.B.I. agent in the midst of trial to investigate a juror as to his conduct is bound to impress the juror and is very apt to do so unduly.   A jury must feel free to exercise his functions without the F.B.I. or anyone else looking over his shoulder.   The integrity of jury proceedings must not be jeopardized by unauthorized invasions.

Id.

Crawford v. Head, 311 F.3d 1288, 1333 (11th Cir. 2002).

Here, as previously mentioned, the trial court denied Petitioner's motion for a new trial and the appellate court affirmed.   A review of the pertinent portion of the record reveals that the State courts' decisions were neither contrary to nor an unreasonable application of federal law.   In pertinent part, the trial court orally ruled as follows:

> THE COURT:  I deny your motion [for a new trial].  We do know he did not talk to his wife.  How do we know that?  She said that in her deposition.  It's evidence.  I believe it.  We made a very careful inquiry that night to see if there was any tainting of the jury.  I find there was no tainting of the jury by any information that came [from] outside the courtroom.  In other words, they rendered their verdict entirely on the evidence they heard in the courtroom and nowhere else.  This thing about before the verdict, after the verdict, it's obvious what they're talking about.  Before they actually filled out and signed the verdict form.  We didn't narrow it down you mean after the vote on the verdict or after you actually signed the verdict form.  This wasn't clarified.  I find no ambiguity, no uncertainty at all in any of the testimony by the jurors.  It's all perfectly consistent.  Some of them are obviously talking before the verdict form was actually filled out and signed.  Some of them are talking about after the vote was taken on what the verdict would be.  It's clear to me that they knew exactly what they were doing.  They decided this case entirely on the evidence heard in the courtroom.  We made a very careful inquiry.  I agree this is a circumstance[] that will never occur again in our lifetimes, but that's the nature of trial level practice.  Things like this come up.  We have to

deal with it on a case by case basis.   I dealt with it, counsel dealt with it as carefully as we could that night.   We did individual further voir dire, if you will, with each juror and then I allowed a deposition.   We talked [to] Mr. Buschle's wife and it came back that there was no conversation between them. I don't find that the least bit remarkable, by the way, that there would be any conversation between them about a trial in which she was the alternate juror and had no part in the deliberations so I found there's absolutely no evidence of any juror misconduct, any tainting of the jury with anything that came in from outside the courtroom.

See Doc. #28, Exh. 8(a) at 172-174.   The reveals that the State courts' decisions were not an unreasonable application of the facts in light of the evidence presented.   See Doc. #28, Exh. 33 at 12 (juror's wife testifying that she did not talk to him about the co-defendants case at all); Exh. 32, Vol. II (questioning of each juror under the auspices of "polling" the jury and each juror stated that the verdict was based on their own violation after considering only the evidence presented in the case and not due to any undue influence of any person and in large part agreeing that the jury foreman mentioned hearing something about this case in the newspaper after the jury reached its verdict); Id. at 456-457, 462 (jury foreman stating that his wife never talked about her jury service as an alternate juror and that he mentioned after the verdict was reached that he thought he remembered similar circumstances discussed previously in a newspaper and that the person was acquitted).   Accordingly, Petitioner is denied relief on Ground Two.

## C.   Grounds Three and Four

The Court addresses Grounds Three and Four together because both grounds raise an ineffective assistance of counsel claim.   In Ground Three, Petitioner asserts that counsel provided him incorrect advice about the type of questions that could be asked about his prior convictions if he testified.   Amended Petition at 8.   In Ground Four, Petitioner faults counsel for failing to call alibi witnesses, but fails to include any factual

support for his claim.  Id. at 10.  In Petitioner's Reply, however, Petitioner specifically alleges that counsel failed to call "3 alibi witnesses" and asserts that "[t]hese witnesses gave statements on Petitioner's behalf, which would have corroborated Petitioner's testimony had they testified and therefor[e] casting doubt as to the outcome of trial."[4] Reply at 8-9.  In response to Grounds Three and Four, Respondent argues that the postconviction court's decision was not contrary to nor an unreasonable application of Strickland, nor was it an unreasonable application of the facts in light of the evidence presented.

A review of the record reveals that Petitioner raised the alibi witness claim in his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850 (hereinafter "Rule 3.850 motion") as Grounds 1(a), 1(b), and 1(c) and the claim regarding misadvice about testifying as Ground 3.  See Exh. 18; Exh. 27.  After the State filed a brief in response and Petitioner filed an amended Rule 3.850 motion, the postconviction court held an evidentiary hearing.  See Exhs. 25-26.  After conclusion of the evidentiary hearing, the postconviction court entered a written order denying Petitioner relief finding as follows:

> An evidentiary hearing was held on March 18, 2010, at which time Defendant was present and represented by court-appointed counsel.  Defendant, Ms. Joyce James, Ms. Tanika Roberts, and Defendant's trial counsel, Mr. Ian Mann, testified at the evidentiary hearing.
>
> The remaining grounds of Defendant's 3.850 motion are claims of ineffective assistance of trial counsel.  Following the U.S. Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), the Florida Supreme Court

---

[4]The Court notes that the record reveals that Petitioner did not testify during his trial, but did testify during the evidentiary hearing held on his Rule 3.850 motion.

has held that for claims of ineffective assistance of counsel to be successful, two requirements must be satisfied:

> First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards.   Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceedings that confidence in the outcome is undermined.

Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986) (citations omitted)   The defendant must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that there is a reasonable probability that,   but for this deficiency, the result of the proceeding would have been different.   Strickland, 466 U.S. at 687, 694. "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct."   Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000).

In this case, Defendant was found guilty of armed robbery with a deadly weapon, grand theft, and grand theft of a motor vehicle.   **Grounds 1(a) and 1(b)** pertain to purported alibi witnesses with respect to the charges of armed robbery with a deadly weapon and grand theft.

Under **ground 1(a)**, Defendant claims that trial counsel was ineffective for failing to call his girlfriend, Ms. James, to testify at trial.   Under **ground 1(b)**, Defendant claims that trial counsel was ineffective for failing to call his sister, Ms. Roberts, to testify at trial.   Defendant alleges that on the day of the armed robbery, Ms. James dropped her children off at daycare and then dropped Defendant off at his sister's residence at approximately 8:45 a.m.   Defendant alleges that he remained at his sister's residence at approximately 9:15 a.m.   Defendant argues that the testimony of Ms. James and Ms. Roberts would have established that he could not have participated in the armed robbery, which occurred at approximately 9:00 a.m.

Ms. James testified at the evidentiary hearing that, on the day of the armed robbery, she left her home at 8:30 a.m., dropped her kids off at daycare at approximately 8:45-8:46 a.m., and dropped the Defendant off at his sister's house at approximately 8:50-8:55 a.m.   On cross examination, the State attempted to refresh Ms. James' recollection by using the transcript of her deposition In this case, a copy of which is attached hereto.   In her deposition, Ms. James testified that her children have to be at daycare by 8:30 a.m. (page 8, lines 7-9), that she arrived at the daycare about 8:20 a.m. (page 8, line 13-15), and that she dropped Defendant off at his sister's residence "between 8:30 and 8:45, somewhere around there" (page 11, lines 1-13).   At the evidentiary hearing, Ms. James testified that the deposition transcript did not refresh her memory and that 9:00 a.m. was the latest that her children could arrive at daycare.   Ms. Roberts testified at the evidentiary hearing that the Defendant left her home around 9:15 a.m. and that she left her home about 9:25 a.m. to take her baby to a 9:45 a.m. doctor appointment.   Defendant testified at the evidentiary hearing that the 911 call pertaining to the armed robbery was made at 9:06 a.m.   He further testified that he was dropped off at his sister's home a little before or a little after 9:00 a.m. and stayed there only 10 to 15 minutes.

Mr. Mann testified at the evidentiary hearing that the sister and girlfriend "came close" to providing an alibi, but it was "not solid" and "didn't match up," and would not "lock into a good alibi."   Mr. Mann further testified that, due to inconsistent statements and the fact that the sister and girlfriend were closely related to the Defendant, their testimony would have provided "little or no benefit."

Having considered the evidence presented at the evidentiary hearing and Ms. James' deposition transcript, and having had the opportunity to observe the demeanor of the witnesses and weigh the credibility of their testimony, the Court finds that trial counsel's decisions to forego calling Ms. James and Ms. Roberts to testify at trial do not constitute ineffective assistance within the meaning of Strickland.   These strategic decisions were reasonable, and accordingly, Defendant has not demonstrated deficiency.   Therefore, **grounds 1(a) and 1(b)** are denied.

**Ground 1(c)** pertains to Defendant's conviction of grand theft of a motor vehicle.   Defendant asserts that his fingerprint was found on a bank receipt in the stolen car and that "the State

used this as evidence that the Defendant was in the car on the morning of the robbery, because the car was tied to the robbery."   Defendant claims that trial counsel was ineffective for failing to call "John," the manager/owner of Aqua Tech Car Wash, to testify at trial.   As an apparent attempt to explain how his fingerprint could have been left on the bank receipt, Defendant claims that "John" would have testified that Defendant worked at the car wash and was "required to touch, move, and throw out items," in customers' cars as part of his job duties.

At the evidentiary hearing, "John" from Aqua Tech did not testify.   Defendant testified at the evidentiary hearing that, as an employee of Aqua Tech, he moved objects in customers' cars. Mr. Mann testified at the evidentiary hearing that his recollection regarding this issue was refreshed by a recent conversation that he had with Mr. Brian Boyle, who represented Defendant in this case prior to Mr. Mann's representation.   Mr. Mann testified that there was a date indicator on the bank receipt that reflected a date after the Defendant had stopped working at the car wash.   Mr. Mann testified that the testimony from the car wash manager was potentially more damaging than beneficial to the Defendant's case.

Having considered the evidence presented at the evidentiary hearing, and having had the opportunity to observe the demeanor of the witnesses and weigh the credibility of their testimony, the Court finds that trial counsel's decision to forego calling "John," the manager/owner of Aqua Tech Car Wash, to testify does not constitute ineffective assistance of counsel within the meaning of <u>Strickland</u>.   This strategic decision was reasonable and, accordingly, Defendant has not demonstrated deficiency.   Therefore, **ground 1(c)** is denied.

Exh. 27 at 648-652 (emphasis in original).

With respect to Petitioner's claim stemming from trial counsel's alleged misadvise about what questions could be asked if Petitioner testified during trial, the postconviction court denied relief finding as follows:

Under **ground 3,** Defendant alleges that trial counsel was ineffective for misadvising him that, if he testified on his own behalf, "the jury was going to hear about his prior convictions and about his prior robbery."   At the evidentiary hearing,

> Defendant testified that he did not take the stand at trial because, during recess at trial, Mr. Mann told him that the jurors would hear about his prior robbery and convictions. Mr. Mann testified at the evidentiary hearing that he did not recall discussing this particular issue with the Defendant and that he did not believe that he ever misadvised his client in the manner alleged by the Defendant.

Exh. 27 at 652 (emphasis in original).   The appellate court *per curiam* affirmed the postconviction court's decision.   Exh. 31.

The Court finds that the State courts' decisions regarding the claims raised in Grounds Three and Four were neither contrary to nor an unreasonable application of Strickland.   The factual findings made by the postconviction court are presumed correct, and the record supports the court's findings.   See Exh. 26.   Trial counsel's decisions regarding who to call as witnesses constitutes a strategic decision and did not amount to deficient performance, particularly in this case where the two alleged alibi witnesses' testimony at the postconviction hearing was ironically more favorable to the Petitioner than the testimony they provided in depositions before trial.   Chandler, 218 F.3d at 1314, n. 14 (describing the decision to call some witnesses and not others as "the epitome of a strategic decision")(quotation marks omitted)); Blanco v. Singletary, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel.").   The third alibi witness, John, who was the manager of the car wash, did not testify at the evidentiary hearing, but counsel recalled that testimony from John would have been damaging due to the date on the bank receipt being the day after Petitioner was no longer employed at the car wash.

Regarding Petitioner's claim that defense counsel gave him incorrect advice about questions that could be asked about this prior convictions if he testified, the postconviction court determined that counsel did not render deficient performance because he did not

give that advice to Petitioner.   The postconviction court's factual finding is supported by the record.   <u>See</u> Exh. 26.   After making that determination, it was not necessary for the postconviction court to address the prejudice prong of <u>Strickland</u>.   <u>Strickland</u>, 466 U.S. at 697 (explaining a court need not address both prongs of <u>Strickland</u>).   Nevertheless, Petitioner also cannot show prejudice as neither the Amended Petition nor the Reply indicate how his testimony would have helped his defense, particularly in light of the other evidence introduced at trial.   <u>See</u> Exh. 32 at 157-191 (both victims testified and provided descriptions of the robbers and vehicle to law enforcement);   <u>Id.</u> at 219-27, 265-70, 287-90 (the car used during the robbery was located outside of apartments where the petitioner and his co-defendant were located); <u>Id.</u> at 197-204 (law enforcement traced Roberts and his co-defendant to nearby apartments and into a vehicle, which they later stopped when children in the car were not in a car seat); <u>Id.</u> at 205-217 (a search of the vehicle produced the items stolen during the robbery).

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Amended Petition for Writ of Habeas Corpus is **DENIED** with prejudice. Grounds 1 and 2 are **DISMISSED** as procedurally barred or in the alternative on the merits.   Grounds Three and Four are **DENIED** on the merits.

2.   The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability . Id.   "A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right."   Id. at § 2253(c)(2).   To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). The issues raised by Petitioner do not satisfy these standards. Further, because Petitioner is not entitled to a certificate of appealability, he is not entitled to proceed *in forma pauperis* on appeal.

**DONE** and **ORDERED** in Fort Myers, Florida on this 9th day of June, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: alr
Copies: All Parties of Record